**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVE KLEIN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ALLERGAN PLC, BRENTON L. SAUNDERS, and MARIA TERESA HILADO,

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Steve Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Allergan plc ("Allergan" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Allergan shares between February 24, 2017, and December 19, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Allergan is a pharmaceutical company that develops, manufactures, and commercializes branded pharmaceutical, device, biologic, surgical, and regenerative medicine products worldwide. The Company was founded in 1983 and is headquartered in Dublin, Ireland. The Company was formerly known as Actavis plc and changed its name to Allergan plc in June 2015.

3. Through its Medical Devices business, the Company produces silicone breast implants. Breast implants are medical devices that are used to augment breast size or to reconstruct the breast following mastectomy or to correct a congenital abnormality.

4. Breast implants consist of a silicone outer shell and a filler (most commonly silicone gel or saline). Breast implants come in a variety of forms, include smooth and textured. In June 2011, the U.S. Food and Drug Administration ("FDA") issued an Update on the Safety of Silicone Gel-Filled Breast Implants, which reported a link between breast implants and Anaplastic Large Cell Lymphoma ("ALCL"). Following the FDA's Update, information was added to the products' labeling, but the added warnings are deeply embedded in a dense list of complications.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) textured breast implants manufactured by Allergan were linked to ALCL; (ii) the foregoing link to cancer, when revealed, would foreseeably force Allergan to recall those textured breast implants from the market; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

6. On December 18, 2018, France's National Agency for the Safety of Medicines & Health Products ("ANSM") ordered the recall of textured breast implants manufactured by Allergan from the European market, stating that the implants "have been linked to a rare form of cancer"—specifically, anaplastic large call lymphoma. On December 19, 2018, Allergan stated that it would remove its textured breast implants from the European market.

7. Following these announcements, Allergan's stock price fell $10.20, or nearly 7%, to close at $136.56 on December 19, 2018.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b). Allergan securities are traded on the New York Stock Exchange ("NYSE"), located within this Judicial District.

12. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

13. Plaintiff, as set forth in the attached Certification, acquired Allergan shares at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant Allergan is an Irish corporation with its principal executive offices located at Clonshaugh Business and Technology Park, Coolock, Dublin, D17 E400, Ireland. Allergan's shares trade in an efficient market on the NYSE under the ticker symbol "AGN."

15. Defendant Brenton L. Saunders has served as the President and Chief Executive Officer of Allergan at all relevant times.

16. Defendant Maria Teresa Hilado has served as the Chief Financial Officer of Allergan at all relevant times.

17. The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein collectively as the "Individual Defendants."

18. The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press

releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Allergan is a pharmaceutical company that develops, manufactures, and commercializes branded pharmaceutical, device, biologic, surgical, and regenerative medicine products worldwide. The Company was founded in 1983 and is headquartered in Dublin, Ireland. The Company was formerly known as Actavis plc and changed its name to Allergan plc in June 2015.

20. Through its Medical Devices business, the Company produces silicone breast implants. Breast implants are medical devices that are used to augment breast size or to reconstruct the breast following mastectomy or to correct a congenital abnormality.

21. Breast implants consist of a silicone outer shell and a filler (most commonly silicone gel or saline). Breast implants come in a variety of forms, include smooth and textured. In June 2011, the UFDA issued an Update on the Safety of Silicone Gel-Filled Breast Implants, which reported a link between breast implants and ALCL. Following the FDA's Update, information was added to the products' labeling, but the added warnings are deeply embedded in a dense list of complications.

**Materially False and Misleading Statements Issued During the Class Period[1]**

22. The Class Period begins on February 24, 2017, when the Company filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K").

23. In the 2016 10-K, the Company stated that it "is a global specialty pharmaceutical company engaged in the development, manufacturing, marketing, and distribution of… medical aesthetics… products." Among the medical aesthetic products the Company markets and touts as a "key promoted product" are breast implants.

24. Allergan reported in the 2016 10-K net revenues from Breast Implants in the United States of $206 million and $175 million, for 2016 and 2015, respectively. Internationally, the Company reported net revenues of $149.9 million and $125.5 million for 2016 and 2015, respectively.

25. With regards to the Company's breast implant production, the 2016 10-K provides:

> Our medical device product candidates, including our breast implants, must undergo rigorous clinical testing and an extensive government regulatory clearance or approval process prior to sale in the United States and other countries. The lengthy process of clinical development and submissions for approvals, and the continuing need for compliance with applicable laws and regulations, require the expenditure of substantial resources. Regulatory clearance or approval, when and if obtained, may be limited in scope, and may significantly limit the indicated uses for which a product may be marketed. Approved products and their manufacturers are subject to ongoing review, and discovery of previously unknown problems with products may result in restrictions on their manufacture, sale, use or their withdrawal from the market.

26. After stating that its medical devices, such as breast implants, undergo a "rigorous" clinical testing and regulatory review, the 2016 10-K included the boilerplate

[1] Emphasis added throughout unless otherwise noted.

warning that "[t]he design, development, manufacture and sale of our products involves the risk of product liability claims by consumers and other third parties, and insurance against such potential claims is expensive and may be difficult to obtain.":

> From time to time reports related to the quality and safety of breast implant devices are published, ***including reports that have suggested a possible association between anaplastic large cell lymphoma and breast implants, as well as negative reports from regulatory authorities in Europe related to a breast implant manufacturer that is not affiliated with the Company***. In addition, government investigations related to the use of products, but not the efficacy themselves, may cause reputational harm to the Company. Negative publicity, whether accurate or inaccurate, about the efficacy, safety or side effects of our products or product categories, whether involving us or a competitor, could materially reduce market acceptance to our products, cause consumers to seek alternatives to our products, result in product withdrawals and cause our stock price to decline. Negative publicity could also result in an increased number of product liability claims, whether or not these claims have a basis in scientific fact. Any such claims, proceedings, investigations or litigation, regardless of the merits, might result in substantial costs, restrictions on product use or sales, or otherwise injure our business.

27. The Company furthers states in the 2016 10-K that its "provides warranty programs for breast implant sales primarily in the United States, Europe and certain other countries." For Fiscal 2016, the Company accounted for a $6.8 million provision for related warranty expenses.

28. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

29. On February 26, 2018, the Company filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K").

30. In the 2017 10-K, the Company stated that it "markets a portfolio of leading brands and best-in-class products for the central nervous system, eye care, ***medical aesthetics*** and dermatology, gastroenterology, women's health, urology and anti-infective therapeutic categories."

31. Among the medical aesthetic products produced by the Company are breast implants. Allergan reported in the 2017 10-K net revenues from Breast Implants in the United States of $242.6 for 2017. Internationally, the Company reported net revenues of $156.9 million for 2017.

32. With regards to the Company's breast implant production, the 2017 10-K provides:

> Our medical device product candidates, including our breast implants, must undergo rigorous clinical testing and an extensive government regulatory clearance or approval process prior to sale in the United States and other countries. The lengthy process of clinical development and submissions for approvals, and the continuing need for compliance with applicable laws and regulations, require the expenditure of substantial resources. Regulatory clearance or approval, when and if obtained, may be limited in scope, and may significantly limit the indicated uses for which a product may be marketed. Approved products and their manufacturers are subject to ongoing review, and discovery of previously unknown problems with products may result in restrictions on their manufacture, sale, use or their withdrawal from the market.

33. After stating that its medical devices, such as breast implants, undergo a "rigorous" clinical testing and regulatory review, the 2017 10-K included the boilerplate warning that "[t]he design, development, manufacture and sale of our products involves the risk of product liability claims by consumers and other third parties, and insurance against such potential claims is expensive and may be difficult to obtain.":

> From time to time reports related to the quality and safety of breast implant devices are published, including reports that have suggested a possible association between anaplastic large cell lymphoma and breast implants, as well as negative reports from regulatory authorities in Europe related to a breast

> implant manufacturer that is not affiliated with the Company. In addition, government investigations related to the use of products, but not the efficacy themselves, may cause reputational harm to the Company. Negative publicity, whether accurate or inaccurate, about the efficacy, safety or side effects of our products or product categories, whether involving us or a competitor, could materially reduce market acceptance to our products, cause consumers to seek alternatives to our products, result in product withdrawals and cause our stock price to decline. Negative publicity could also result in an increased number of product liability claims, whether or not these claims have a basis in scientific fact. Any such claims, proceedings, investigations or litigation, regardless of the merits, might result in substantial costs, restrictions on product use or sales, or otherwise injure our business.

34. The 2017 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

35. The statements referenced in ¶¶ 23-28 and ¶¶ 30-34 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) textured breast implants manufactured by Allergan were linked to ALCL; (ii) the foregoing link to cancer, when revealed, would foreseeably force Allergan to recall those textured breast implants from the market; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times..

**<u>The Truth Begins to Emerge</u>**

36. On December 18, 2018, France's National Agency for the ANSM ordered the recall of textured breast implants manufactured by Allergan from the European market, stating that the implants "have been linked to a rare form of cancer"—specifically, ALCL.

37. On December 19, 2018, Allergan issued a press release stating that it would cease selling textured breast implants in Europe. In particular, the Company stated that it "has suspended sales of textured breast implants and tissue expanders and is withdrawing any remaining supply in European markets" following a compulsory recall request by the ANSM.

38. This disclosure was the first time the Company acknowledged that its prior statements telling investors that its breast implants were not reported to be linked to ALCL in Europe were not accurate.

39. In August 2018, the FDA reported that as of Sept. 30, 2017, it had received 414 reports of the ALCL related to breast implants, including nine cases that were fatal. Of the 272 cases for which the implant surface was known approximately 89% were textured. The FDA further noted that the real number of cases and size of the risk was not known, because there was a lack of information about how many women in the United States and worldwide had received implants. According to the FDA's best estimate, ALCL may occur in one in 3,817 to 30,000 women with textured implants.

40. Following these announcements, Allergan's stock price fell $10.20, or nearly 7%, to close at $136.56 on December 19, 2018.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Allergan securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Allergan securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Allergan or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Allergan;
- whether the Individual Defendants caused Allergan to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Allergan securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Allergan securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Allergan securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50. Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

51. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Allergan securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Allergan securities and options at artificially inflated prices. In furtherance of

this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Allergan securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Allergan finances and business prospects.

54. By virtue of their positions at Allergan , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Allergan, the Individual Defendants had knowledge of the details of Allergan internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Allergan. As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Allergan businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Allergan securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Allergan business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Allergan securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57. During the Class Period, Allergan securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Allergan securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Allergan securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Allergan securities declined

sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60. Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. During the Class Period, the Individual Defendants participated in the operation and management of Allergan, and conducted and participated, directly and indirectly, in the conduct of Allergan business affairs. Because of their senior positions, they knew the adverse non-public information about Allergan misstatement of income and expenses and false financial statements.

62. As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Allergan financial condition and results of operations, and to correct promptly any public statements issued by Allergan which had become materially false or misleading.

63. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Allergan disseminated in the marketplace during the Class Period concerning Allergan results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Allergan to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Allergan within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Allergan securities.

64. Each of the Individual Defendants, therefore, acted as a controlling person of Allergan. By reason of their senior management positions and/or being directors of Allergan, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Allergan to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Allergan and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Allergan.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: December 26, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***