UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

THOMAS F. COOK, individually and on behalf
of all others similarly situated,

               Plaintiff,                      18 Civ. 12089 (CM)

     -against-

ALLERGN PLC, BRENTON L. SAUNDERS,
WILLIAM MEURY, C. DAVID NICHOLSON,

               Defendants.

————————————————————————x

STEVE KLEIN, individually and on behalf
of all others similarly situated,

               Plaintiff,                      18 Civ. 12219 (CM)

     -against-

ALLERGAN PLC, BRENTON L. SAUNDERS,
and MARIE TERESA HILADO,

               Defendants.

————————————————————————x

## DECISION AND ORDER APPOINTING LEAD PLAINTIFF, CONSOLIDATING CASES, AND SETTING SCHEDULE

McMahon, C.J.:

     The court has received five motions from potential lead plaintiffs in this Private Securities Litigation Reform Act ("PSLRA") federal securities fraud action.

     One of those five motions, made on behalf of potential lead plaintiff Thoi Jason Nguyen, has been withdrawn. (18 Civ. 12089 Dkt. No. 37.)

     A second motion, made on behalf of potential lead plaintiff Mila Naumik (18 Civ. 12089 Dkt. No. 19), requires little consideration, since Ms. Naumik's holdings are substantially less than the holdings of the other three movants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/21/2019

The remaining movants are as follows:

1. Ge Zhou ("Zhou"), an individual investor represented by Kahn, Swick & Foti, LLC (18 Civ. 12089 Dkt. No. 12, 18 Civ. 12219 Dkt. No. 12);

2. Boston Retirement System ("BRS"), an institutional investor represented by Pomerantz, LLP and Thornton Law Firm, LLP (18 Civ. 12089 Dkt. No. 22); and

3. DeKalb County Pension Fund ("DeKalb"), an institutional investor represented by Faruqi & Faruqi, LLP (18 Civ. 12089 Dkt. No. 25, 18 Civ. 12219 Dkt. No. 15).

All proposed lead counsel are qualified. The only issue is who shall serve as lead plaintiff.

Pursuant to the PSLRA, the presumptive lead plaintiff is the investor with the largest financial interest in the outcome of the action, as long as that investor satisfies the requirements of Fed. R. Civ. P. 23, in that (1) its claims are typical of and share common questions of law and fact with the claims of the absent class members, and (2) it will adequately represent the interests of the entire class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In the legislative debates leading to the passage of the PSLRA, Congress expressed a particular interest in seeing sophisticated institutional investors, rather than individuals, take control of securities fraud class actions. *See Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("In enacting the PSLRA, Congress expressed an intention to encourage institutional investors to step forward and assume the role of lead plaintiff in an effort to prevent lawyer-driven litigation."). There is, therefore, a preference for the appointment of an institutional lead plaintiff, assuming all else is in equipoise. *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332–33 (S.D.N.Y. 2005).

In the original moving papers:

Zhou claims a financial interest of $1,077,089. Approximately 61% of that interest was incurred on losses in options trading; only $420,159 was incurred in connection with common stock trades. (18 Civ. 12089 Dkt. No. 14 Ex. B.)

BRS claims losses of $769,117 (calculated on a FIFO basis) or $760,588 (calculated on a LIFO basis). (18 Civ. 12089 Dkt. No. 24 Ex. C.) All of its losses were incurred in connection with trades in common stock. (*Id.*)

DeKalb claimed losses of $742,341 in common stock trades, slightly less than BRS' claimed loss. (18 Civ. 12089 Dkt. No. 27 Ex. C.)

As is always the case, each of these putative lead plaintiffs contends that the others deliberately miscalculated (and so inflated) their losses.

Zhou claims that both BRS and DeKalb overstated their losses by failing to exclude losses on "in and out" transactions that took place during the class period but before the

misconduct that is alleged in the complaint was ever revealed to the public. Zhou contends that eliminating those transactions using a LIFO methodology reduces BRS's losses to $616,462, and DeKalb's to $735,269 – both of which are less than Zhou's loss from both common stock and options trades during the class period. (18 Civ. 12089 Dkt. No. 33 at 2–3.)

DeKalb – after changing its loss calculation formula in a manner that cut its own loss in half, to $337,388.55 – recalculated Zhou's losses at $142,800 and BRS' at $135,822, respectively. It did this by using its own "*Dura* Eligible Losses" methodology, in which losses were reduced by all "in and out transactions" that occurred during the Class Period as well as subject to the PSLRA's 90-day look-back provision under 15 U.S.C. § 78u-4(e)(1). (18 Civ. 12089 Dkt. No. 35 at 7–16 (citing to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 344–47 (2005)).)

BRS urges the court not to consider DeKalb's revised loss calculations, because they were not submitted as part of DeKalb's original motion papers; they were, rather, first raised in papers filed in opposition to BRS' motion. BRS argues that this violates the PSLRA's requirement that financial losses cannot be asserted for the first time in any pleading that is filed after the 60-day window to seek lead plaintiff appointment has closed. (18 Civ. 12089 Dkt. No. 42 at 3–4.) *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). It also insists that Zhou's options losses must be excluded because his "self-contradictory and unusual" trading patterns render his claims atypical of those of the average class member. (18 Civ. 12089 Dkt. No. 38 at 4.)

Finally, in an effort to disqualify DeKalb as an adequate class representative, Zhou reveals that DeKalb's Chairman, Edmund J. Wall, was found civilly liable in 2015 for intentional misrepresentation, gross negligence and breach of fiduciary duty, and was the subject of a $1.25 million punitive damages jury verdict, in the case of *Canyon Ridge Resort LLC v. Sterne, Agee & Leach, Inc., et al.*, 11-C-1083 (Cir. Ct. Hamilton Cnty., Tennessee). DeKalb advises the court that this matter, which is unrelated to Wall's position with the Pension Fund, was settled while new trial motions were pending.[1]

The court selects BRS as the lead plaintiff for the following reasons:

First, Zhou is an individual, not an institutional investor. Moreover, approximately 60% of his claimed losses came as a result of options trading, which included sales of both puts and calls during the same time period. (18 Civ. 12089 Dkt. No. 14 Ex. B.) He is not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3). The appointment of Zhou as lead plaintiff very likely "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761

---

[1]     Zhou also revealed that Wall pleaded guilty to a misdemeanor public indecency charge – not "recently," as Zhou put it, but in 2007 – in connection with which he served 12 months probation with a term of community service. Tit for tat, DeKalb apprised the court that Zhou, too, has a criminal record – for a misdemeanor traffic conviction. Neither of these things has the slightest relevance to the court's lead plaintiff analysis, except insofar as they demonstrate the depths to which lawyers will descend in an effort to become lead counsel in a PSLRA case.

(AKH), 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citing *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 61 (RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005)).

Second, a review of the parties' original motion papers reveals that BRS had a larger loss than did DeKalb, whether calculated on a LIFO or FIFO basis. Applying *Dura* at this stage of the proceeding – which DeKalb purports to do – does not necessarily alter this conclusion.

For one thing, the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute.[2] For another, it is not clear where a *Dura* analysis would lead in this case. Under *Dura* and its progeny, "any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was *ever* disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation." *In re Comverse*, 2007 WL 680779, at *4 (emphasis added). Here, allegations of fraud in the complaint suggest that the "fraud premium"[3] may have varied throughout the Class Period as a result of, *inter alia*, partial corrective disclosures of Allergan's malfeasance. (*See, e.g.*, 18 Civ. 12219 Dkt. No. 1 (complaint).) Put otherwise, BRS asserts that Allergan's misconduct was partly, but not fully, disclosed at various points during the Class Period. BRS argues that this fact pattern means its ostensible "in and out" transactions are compensable, even under *Dura*.[4]

Whether this analysis is correct is beyond the scope of a lead plaintiff appointment motion, but DeKalb's assertion that "no movant or investor could possibly have suffered *Dura* eligible losses in excess of $10.20 per share" (Dkt. No. 25 at 9) is not self-evident in view of BRS' argument. I cannot simply "guess about the effect of . . . as yet-unknown factors in selecting a lead plaintiff." *In re Watchguard Secs. Litig.*, 2005 U.S. Dist. LEXIS 40923, *15 n.6 (W.D. Wash. July 13, 2005). Given the length of the pleaded class period (beginning in early 2017 and going to December 2018) and the documented decline in Allergan's share price during that period (at points dramatically), it would be unwise to embrace DeKalb's convoluted loss calculation methodology at the expense of BRS' considerably more straightforward calculations. The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted.

Third, BRS is an experienced PSLRA lead plaintiff, as are its counsel as lead counsel. The only objection mustered by anyone to BRS's adequacy as a class representative is its status

---

[2]     *E.g.*, *compare In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) *with In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007).

[3]     The "fraud premium" is the amount by which the stock is inflated because of the alleged misrepresentations or omissions.

[4]     BRS' argument distinguishes this case from *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015), on which DeKalb relies in its responsive papers. (*See* 18 Civ. 12089 Dkt. No. 35 at 2 n.5.) In *Khunt*, unlike here, there was no allegation of periodic partial disclosures – there simply was one 24-hour period in which the alleged fraud was disclosed to the market, causing Alibaba's ADS price to fall precipitously after a continuous period of steady increase. *Id.* at 528. The *Dura* analysis pertaining to proposed lead plaintiffs' loss calculations was, therefore, quite straightforward in that case.

as lead plaintiff in two other pending PSLRA actions. According to counsel for DeKalb, this means BRS must be overstretched; as evidence, it points to typographical errors in the brief filed by BRS in opposition to Zhou's and DeKalb's competing motions. That is the sort of argument that does not dispose me to favor the lead counsel candidacy of the firm making it.

However, this court is not interested in appointing co-lead counsel in this matter. Unless there is some special reason why the services of two firms are needed, the appointment of co-lead counsel tends to inflate legal fees – a result this court is particularly anxious to avoid. No reason for having two law firms rather than one is suggested in BRS' moving papers. Since both the Pomerantz and Thornton firms would ably represent the class, and there is nothing to choose between them, BRS should select one of the two of them to serve as lead counsel.

Lead Plaintiff has fourteen days from the date of this decision to file an Amended Complaint. Defendants have until May 10, 2019 to file a motion to dismiss (I assume one will be made; they always are). Lead Plaintiff has until June 14, 2019 to file a response to said motion. Reply papers are due on June 28, 2019. All agreements among counsel to other dates are null and void.

Finally, because the Court agrees with all movants that the criteria for consolidation are present in the above-captioned actions, those actions are hereby consolidated, pursuant to Fed. R. Civ. P. 42(a). The new master caption will be "In Re Allergan PLC Securities Litigation," and all filings should be docketed under the number 18 Civ. 12089.

The Clerk of Court is respectfully directed to close the following motions: in 18 Civ. 12089, close Dkt. Nos. 12, 15, 19, 22, 25; in 18 Civ. 12219, close Dkt. Nos. 12, 15.

This constitutes the decision of the court

Dated: March 21, 2019

_____
Chief Judge

BY ECF TO ALL COUNSEL